IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| VALBRUNA STAINLESS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| ADT SECURITY SERVICES, INC. and | ) | |
| ADT HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AND JURY DEMAND

Plaintiff, Valbruna Stainless, Inc. ("Valbruna"), for its Complaint against Defendant ADT Security Services, Inc. ("ADT") and ADT Holdings, Inc. (ADT Holdings"), alleges and says:

## JURISDICTION AND PARTIES

1.     Valbruna is a Delaware corporate citizen with its principal place of business at 2400 Taylor Street, Fort Wayne, Indiana.  Valbruna is licensed by the Indiana Secretary of State to conduct business in Indiana and by the Texas Secretary of State to conduct business at 4747 Oates Road, Houston, Texas 7703.

2.     ADT is a Delaware corporate citizen with its principal place of business at 1 Town Center Road, Boca Raton, Florida 33486.  ADT is licensed by the Indiana Secretary of State to conduct business and does conduct business in Indiana and the Texas Secretary of State to conduct business at 2625 Louisiana Street, Houston, Texas 7706.

3.     ADT Holdings is a Delaware corporate citizen with its principal place of business at 1 Town Center Road, Boca Raton, Florida 33486.

1

4.    Jurisdiction of this Court is proper under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

5.    Venue is proper in this District under 28 U.S.C. § 1391(b)(3) and 28 U.S.C. § 1391(c) because the Defendant is subject to personal jurisdiction, resides and is found in this District.

## FACTS COMMON TO ALL CLAIMS

6.    ADT is in the business of providing professional security service systems, including the hardware, software and monitoring equipment.

7.    On or about August 14, 2006, Valbruna paid ADT $13,807.29 for the purchase and installation of an ADT security service system ("System") at its Oates Road site ("Premises") (Exhibit "A", hereinafter, "Contract").

8.    Before Valbruna purchased the System from ADT, Valbruna informed ADT of its physical security needs for the Premises and particular purpose in purchasing the System. Specifically, that Valbruna wanted the entire Premises to be protected from theft and/or vandalism, including Valbruna's warehouse and its storage yard at the Premises because its insurance policy would only cover the Premises and Valbruna's product inventory against theft if the Premises were properly protected by a functioning alarm and security monitoring system.

9.    Before ADT sold the System to Valbruna, ADT assured, represented and warranted to Valbruna that the quality, capability and performance of the System that ADT designed would protect the entire Premises from theft and/or vandalism.   In fact, ADT represented that the System it sold to Valbruna was fit for Valbruna's particular purpose.   ADT also represented that the products and services as then sold were merchantable, that is, that they would perform as advertised and promised.   Valbruna relied upon ADT's advertised experience,

2

training, and purported competence when purchasing the System from ADT.

10.     On or before November 9, 2009, approximately $62,000 worth of Valbruna Steel products was stolen from Valbruna's storage yard at the Premises. Evidence of the theft is found in the Houston Police Department Offense Report (Exhibit "**B**") under Incident No. 167397019W, and evidence of the value of the stolen product is attached to that report (Exhibit "**C**"). This was one of the specified areas which were to be protected and monitored by ADT's System. The police detected no signs of tampering with the System's control box.

11.     After the product was stolen from the Premises, Valbruna's site manager contacted ADT, which sent a technician/investigator to inspect the ADT System at the Premises. The ADT technician went through every piece of ADT equipment at the Premises and ultimately found that electronic resistors or "overrides" had been placed in the photoelectric sensor system control box for the storage yard of the Premises so that the ADT System would not and could not detect an intruder when the photoelectric beam was disturbed (*see* photographs at Exhibits "**D**" through "**E**"). This allowed thieves undetected access to Valbruna's property, product inventory and goods. There were no signs of tampering with the control box, and only ADT had a key to the photoelectric sensor system control box. The ADT technician admitted that ADT or its agents emplaced the resistors in the photoelectric sensor system control box.

12.     ADT invoiced and charged Valbruna, by wire and/or mail, across state lines for the System and monthly monitoring fees -- that is, for security equipment and surveillance coverage -- and Valbruna paid for the System and monthly monitoring fees by wire and/or mail across state lines.

13.     The bypassing of the System was purposely done by ADT and the bypassing compromised the System during installation, subsequent maintenance, and monitoring. The

3

resistors were not detected from August 2006 until December 2009 when Valbruna discovered theft of its product/inventory. ADT's emplacement of the bypasses and/or failure to detect the corruption in the System at the Premises constitutes either intentional criminal complicity or gross negligence.

14.     After the theft, ADT installed $6,336.25 of system "upgrades" at the Premises so as to provide proper coverage for the storage yard area.

15.     Between August 2006 and December 2009, Valbruna paid $12,234.40 for monthly security monitoring services by ADT at the Premises (Exhibit "F").

16.     From December 2009 to February 2010, during the period when the System was being upgraded at the site, Valbruna paid $10,816.51 to hire physical security guards to safeguard its product/inventory and the Premises (Exhibit "G").

17.     Because Valbruna's insurance policy would only cover the Premises and its product against theft if the Premises were properly protected by a functioning alarm and security monitoring system, Valbruna had and has no feasible recourse from its insurance carrier for the losses caused by ADT.

18.     As a direct result of ADT's purposeful acts and/or gross negligence, Valbruna has been damaged in an amount to be determined at trial, but in no case is that amount less than $124,719.80, including: $61,862.00 of stolen product inventory, $13,807.29 for the purchase of the System, $12,234.40 for a monthly monitoring fee from installation in August 2006 through December 2009, $10,816.51 for the costs of physical security guards at the Premises, and costs, expenses and attorney's fees.

19.     Valbruna relied upon ADT's assurances, representations, warranties and advertisements about the quality, performance and capability of the products and the System that

4

it sold to Valbruna.   Valbruna's reasonable reliance on these representations produced the expectation that the products and the System would perform as promised, bargained for and paid for.  ADT's false assurances and representations as to its products and services and its System's capability misled and deceived Valbruna.

## COUNT I
## RACKETEERING INFLUENCED CORRUPT ORGANIZATION VIOLATIONS

20.     Valbruna hereby re-alleges and incorporates paragraphs 1 through 19 of this Complaint as though fully set forth herein.

### Relevant Statutes

21.     At all times relevant to this Complaint, there was in full force and effect in the United States of America, a certain statute, namely the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S. Code § 1961, *et seq.*

22.     At all times relevant to this Complaint there was in full force and effect in the United States certain statutes commonly referred to as the Mail and Wire Fraud Statutes, 18 U.S. Code §§ 1341, 1343, and 1346.

### The Racketeering Enterprise

23.     The racketeering enterprise includes ADT Holdings, Inc. and the legal entity ADT Security Services, Inc., its operating company, and offices throughout the United States (hereinafter, collectively "Enterprise" or "RICO Defendants"), and the association-in-fact of its various members, shareholders, and employees.

24.     The Enterprise existed and exists to use monies gained through racketeering activities to further profit and maximize the income of the RICO Defendants and of the various and controlling members of the RICO Defendants.

25.     The Enterprise affected and affects interstate commerce as follows:

    a.  By conducting its affairs across state lines;

    b.  The Enterprise, in the regular course of business, utilized and utilizes the mails of the U.S. Postal Service to transmit information between its agents and communicate with Valbruna and ADT's other customers / victims; and

    c.  The Enterprise utilized and utilizes the means of interstate telephone calls across state lines in the regular course of business to communicate among its agents and various prospective victims.

### Racketeering Activity

26.    ADT, violated 18 U.S. Code § 1962(c) by conducting its affairs through a pattern of racketeering activity as defined in 18 U.S. Code § 1961(1)(B), consisting of acts of mail and wire fraud in violation of 18 U.S. Code §§ 1341, 1343, and 1346, and in violation of Texas law. Specifically, ADT devised a scheme or artifice to defraud Valbruna and other customers, that is, to obtain victims' money by false or fraudulent pretenses, representations, and/or promises, and placed in the United States Post Office mail and knowingly caused to be delivered by U.S. mail to the victims, false documentation and written representations regarding invoices for security services for Valbruna's Premises and other customers' properties to further such fraud upon these victims.

27.    The pattern of racketeering activity is further defined and described below.

### The Pattern of Racketeering Activity

28.    The Enterprise engaged in a scheme or artifice to defraud its victims by using mail fraud and wire fraud to profit from the victims of their scheme. The Enterprise continues to profit from the scheme to defraud by using customers'/victims' funds to further profit from their attempts to induce additional victims to submit to the RICO Defendants' scheme. ADT's pattern

6

of racketeering activity is continuing and related to past schemes relating to invoicing and charging by mail and wire, its customers/victims across state lines for security services -- that is, for security equipment and surveillance coverage -- which was not provided to the customers/victims, and emplaced resistors or "overrides" in the photoelectric sensor system control boxes that allowed thieves undetected access to  the customers'/victims' property, inventory and goods and to commit larceny.  The Enterprise will continue in the future to acquire and/or attempt to acquire illegal gains in violation of 18 U.S. Code § 1962(c).

29.     This pattern of racketeering activity has existed since at least on or before October 31, 2000.  *See SAIA Food Distrib. & Club, Inc., v. SecurityLink from Ameritech, Inc., and ADT Sec. Serv., Inc.*, 902 So. 2d 46 (Ala. 2004).  Other customers/victims of ADT's racketeering activity include, *Sekil v. ADT Sec. Serv., Inc.*, 2008 W.L. 4844209 (S.D. Tex. Nov. 3, 2008); *Jewelers Mut. Ins. Co. v. ADT Sec. Serv., Inc.*, 2009 W.L. 2031782 (M.D. Cal. July 9, 2009); *Sabir v. ADT Sec. Serv., Inc.*, 2008 W.L. 1924984 (M.D. Ala. April 30, 2008); *Prender Gast v. ADT Sec. Serv., Inc.*, 2008 W.L. 5423129 (W.D. NY Dec. 24, 2008); *Systems v. ADT Sec. Serv., Inc.*, 2008 W.L. 682232 (D.N.J. March 7, 2008); and *Synnex Corp. v. ADT Sec. Serv., Inc.*, 394 N.J. Super. 577, 928 A.2d 37 (N.J. Super. Ct. App. Div. 2007).

**Defendants' Conduct and Participation in Racketeering Enterprise**

30.     The RICO Defendants operated, conducted and participated in the operation of the Enterprise.

31.     The predicate acts of racketeering activity described above are all related in that the RICO Defendants, acting through the Enterprise, have conducted these criminal acts of fraud to obtain monies and profits for the Enterprise which it would not have acquired by lawful means.

7

32. The predicate acts are continuous and will continue in the future.

33. The individual RICO Defendants comprising the Enterprise employ the predicate acts of racketeering activity as a regular method of conducting business, using fraud whenever the opportunity presents itself on whomever it encounters.

34. As shown, the RICO Defendants have a history of using the proceeds of current operations and existing assets to finance the expansion of the Enterprise.

35. Each RICO Defendant was a necessary and integral part of the scheme to defraud Valbruna and each played a role in the operation and control of the scheme defrauding its customers/victims.

36. As a direct result of ADT's purposeful acts, Valbruna has been damaged in an amount to be determined at trial but in no case is that amount less than $124,719.80, including: $61,862.00 of stolen product inventory, $13,807.29 for the purchase of the System, $12,234.40 for a monthly monitoring fee from installation in August 2006 through December 2009, $10,816.51 for costs of physical security guards at the Premises, and costs, expenses and attorney's fees.

WHEREFORE, Valbruna, by counsel, prays this Court enter a judgment against the RICO Defendants, jointly and severally, in an amount which will compensate Valbruna for its damages, treble damages pursuant to 18 U.S. Code § 1964(c), for the costs of this action, for prejudgment and post-judgment interest, for reasonably attorney's fees pursuant to 18 U.S. Code § 1964(c), and for all other just and proper relief in the Premises under Fed. R. Civ. P. 54(c).

## COUNT II
## BREACH OF EXPRESS CONTRACT

37. Valbruna hereby re-alleges and incorporates paragraphs 1 through 36 of this Complaint as though fully set forth herein.

8

38.     ADT's actions, as described in the preceding paragraphs of this Complaint, constitute breach of the express System Contract and the expressed and written purpose of the Contract.

39.     As a direct result of ADT's breach, Valbruna has been damaged in an amount to be determined at trial but in no case is that amount less than $124,719.80, including: $61,862.00 of stolen product inventory, $13,807.29 for the purchase of the System, $12,234.40 for a monthly monitoring fee from installation in August 2006 through December 2009, $10,816.51 for costs of physical security guards at the Premises, and costs, expenses and attorney's fees.

WHEREFORE, Valbruna, by counsel, prays this Court enter judgment against the Defendant in an amount which will compensate Valbruna for its damages, for the costs of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the Premises under Fed. R. Civ. P. 54(c).

## COUNT III
## BREACH OF IMPLIED CONTRACT

40.     Valbruna hereby re-alleges and incorporates paragraphs 1 through 39 of this Complaint as though fully set forth herein

41.     ADT's actions, as described in the preceding paragraphs of this Complaint, constitute breach of the implied System Contract and the intended purpose of the Contract.

42.     As a direct result of ADT's breach, Valbruna has been damaged in an amount to be determined at trial but in no case is that amount less than $124,719.80, including: $61,862.00 of stolen product inventory, $13,807.29 for the purchase of the System, $12,234.40 for a monthly monitoring fee from installation in August 2006 through December 2009, $10,816.51 for costs of physical security guards at the Premises, and costs, expenses and attorney's fees.

WHEREFORE, Valbruna, by counsel, prays this Court enter judgment against the

9

and costs, expenses and attorney's fees. As a direct result of ADT's purposeful and malicious acts or gross negligence, Valbruna is also entitled to exemplary/punitive damages.

WHEREFORE, Valbruna, by counsel, prays this Court enter judgment against the Defendant in an amount which will compensate Valbruna for its damages, for the costs of this action, for prejudgment and post-judgment interest, for exemplary/punitive damages, for reasonable attorney's fees and for all other just and proper relief in the Premises under Fed. R. Civ. P. 54(c).

**COUNT V**
**FRAUD**

47.     Valbruna hereby re-alleges and incorporates paragraphs 1 through 46 of this Complaint as though fully set forth herein.

48.     Under Texas law, fraud occurs where a defendant makes a material misrepresentation that is false, defendant knows the representation is false when made or makes it recklessly as a positive assertion without any knowledge of its truth, defendant intends to induce plaintiff to act upon the representation, and plaintiff actually and justifiably relies upon the representation, and thereby, suffers injury.

49.     As described in the preceding paragraphs of this Complaint, ADT's actions constitute fraud under Texas law. Before Valbruna purchased the System from ADT, Valbruna informed ADT of its security services system needs and particular purpose.

50.     ADT assured, represented and warranted to Valbruna that the quality, capability and performance of the System that ADT designed would protect and/or deter the entire Premises from theft and/or vandalism. Valbruna relied upon ADT's advertised experience, training, and purported competence when purchasing the System from ADT.

11

51.     ADT provided inaccurate and misleading representations to Valbruna with either knowledge that the representations were false or made them with reckless disregard or ignorance of the falsity of the statements, and with the intent to deceive Valbruna, in order to obtain from Valbruna money for the purchase of the System and money from Valbruna's monthly payment for monitoring fees.

52.     But for the presentation of false and fraudulent information, Valbruna would not have purchased the System and paid the monthly monitoring fees to ADT.

53.     Valbruna reasonably relied upon the representations of ADT.

54.     Valbruna' reliance proximately caused its injuries.

55.     ADT's actions constitute fraud in that its material misrepresentations of fact were false; made with knowledge of the falsity or in reckless ignorance of the falsity; relied upon by Valbruna; and were the proximate cause of Valbruna' damages.

56.     As a direct result of ADT's fraudulent actions, Valbruna has been damaged in an amount to be determined at trial but in no case is that amount less than $124,719.80, including: $61,862.00 of stolen product inventory, $13,807.29 for the purchase of the System, $12,234.40 for a monthly monitoring fee from installation in August 2006 through December 2009, $10,816.51 for costs of physical security guards at the Premises, and costs, expenses and attorney's fees.     As a direct result of ADT's fraud, Valbruna is also entitled to exemplary/punitive damages.

WHEREFORE, Valbruna, by counsel, prays this Court enter judgment against the Defendant in an amount which will compensate Valbruna for its damages, for the costs of this action, for prejudgment and post-judgment interest, for exemplary/punitive damages, for reasonable attorney's fees and for all other just and proper relief in the Premises under Fed. R.

12

Civ. P. 54(c).

## COUNT VI
## CONSTRUCTIVE FRAUD

57.     Valbruna hereby re-alleges and incorporates paragraphs 1 through 56 of this
Complaint as though fully set forth herein.

58.     Under Texas law, constructive fraud is the breach of some legal or equitable duty
which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive
others, to violate confidence, or to injure public interests.

59.     As described in the preceding paragraphs of this Complaint, ADT's actions
constitute constructive fraud under Texas law. Prior to purchasing the System, Valbruna
described its security service needs to ADT. ADT owed Valbruna a duty to honestly assess
Valbruna's security services needs and to sell to Valbruna a security services system that
prevented and/or detected theft and/or vandalism at the Premises. ADT violated that duty to
Valbruna by selling Valbruna the System which did not prevent and/or detect theft and/or
vandalism at the Premises and by making the deceptive material misrepresentations described
above in the preceding paragraphs of this Complaint.

60.     Valbruna reasonably relied on ADT's deceptive assurances, representations,
warranties, and advertisements about the System for the Premises.

61.     After the System was installed at the Premises on or about August 2006, ADT
remained silent when ADT had a duty to speak to or inform Valbruna that ADT had emplaced
resistors in and by-passed the photoelectric sensor system control box for the storage yard of the
Premises so that the System would not and could not detect an intruder when the photoelectric
beam was disturbed. The bypassing of the System was purposely done by ADT and the
bypassing compromised the System during installation, subsequent maintenance, and

13

monitoring. The resistors were not detected from August 2006 through December 2009 when Valbruna discovered the theft of its product/inventory.

62. Valbruna purchased the System and monthly monitoring services in reliance upon ADT's deceptive representations with the expectation that the System would prevent and/or detect theft and/or vandalism on the Premises. The prevention and/or detection of theft and/or vandalism were both material conditions and terms of and the motivation for Valbruna to purchase the System and monthly monitoring services for the Premises from ADT. Because ADT knew or should have known that the System would not prevent and/or detect theft and/or vandalism at the Premises, ADT constructively defrauded Valbruna.

63. As a result of ADT's professional status as a security services system specialist, and as an expert in its field, ADT had an advantage over Valbruna. Valbruna reasonably relied upon ADT's purported expertise. ADT falsely obtained the purchase price for the System and monthly monitoring fees from Valbruna at Valbruna's expense.

64. As a direct result of ADT's fraudulent actions, Valbruna has been damaged in an amount to be determined at trial but in no case is that amount less than $124,719.80, including: $61,862.00 of stolen product inventory, $13,807.29 for the purchase of the System, $12,234.40 for a monthly monitoring fee from installation in August 2006 through December 2009, $10,816.51 for costs of physical security guards at the Premises, and costs, expenses and attorney's fees.

WHEREFORE, Valbruna, by counsel, prays this Court enter judgment against the Defendant in an amount which will compensate Valbruna for its damages, for the costs of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the Premises under Fed. R. Civ. P. 54(c).

14

## COUNT VII
## UNJUST ENRICHMENT

65. Valbruna hereby re-alleges and incorporates paragraphs 1 through 64 of this Complaint as though fully set forth herein.

66. As described in the preceding paragraphs of this Complaint, ADT has unfairly profited from the receipt of money from Valbruna for the purchase of the System and the monthly monitoring fees Valbruna paid to ADT during the period of August 2006 to December 2009.

67. As a direct result of ADT's actions, Valbruna has been damaged in an amount to be determined at trial but in no case is that amount less than $124,719.80, including: $61,862.00 of stolen product inventory, $13,807.29 for the purchase of the System, $12,234.40 for a monthly monitoring fee from installation in August 2006 through December 2009, $10,816.51 for costs of physical security guards at the Premises, and costs, expenses and attorney's fees.

WHEREFORE, Valbruna, by counsel, prays this Court enter judgment against the Defendant in an amount which will compensate Valbruna for its damages, for the cost of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the Premises under Fed. R. Civ. P. 54(c).

## COUNT VIII
## BREACH OF EXPRESS WARRANTIES

68. Valbruna hereby re-alleges and incorporates paragraphs 1 through 67 of this Complaint as though fully set forth herein.

69. Under Texas law, an express warranty for services exists where defendant sold services to plaintiff, defendant made a representation, the representation became a part of the bargain, and defendant breached the warranty.

15

70.     As described in the preceding paragraphs of this Complaint, ADT sold security services to Valbruna.  ADT made representations that were guarantees of the quality of the System.  These express warranties became part of the basis of the bargain for the purchase and sale of the System.

71.     ADT breached the express warranties made to Valbruna, and Valbruna has been damaged by ADT's breach of these express warranties.

72.     As a direct result of ADT's breach of the express warranties, Valbruna has been damaged in an amount to be determined at trial but in no case is that amount less than $124,719.80, including: $61,862.00 of stolen product inventory, $13,807.29 for the purchase of the System, $12,234.40 for a monthly monitoring fee from installation in August 2006 through December 2009, $10,816.51 for costs of physical security guards at the Premises, and costs, expenses and attorney's fees.

WHEREFORE, Valbruna, by counsel, prays this Court enter judgment against the Defendant in an amount which will compensate Valbruna for its damages, for the costs of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the Premises under Fed. R. Civ. P. 54(c).

## **JURY DEMAND**

Valbruna, by counsel, pursuant to Federal Rules of Civil Procedure 38(B), hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**CARSON BOXBERGER LLP**

By _____

Kevin P. Podlaski (25168-02)
J. Blake Hike (28601-02)
*Attorneys for Plaintiff, Valbruna Stainless, Inc.*

1400 One Summit Square
Fort Wayne, IN 46802
Telephone: (260) 423-9411
Fax: (260) 423-4329
podlaski@carsonboxberger.com
hike@carsonboxberger.com

F:\V\Valbruna 23,782\ADT Litigation - 1\Complaint.doc

17

| Service Address: | Statement Date: | Total Due: |  |
|---|---|---|---|
| 4747 Oates Rd<br>Houston, TX 77013-3343 | 09/11/06 | $13,807.29 | Page 2 of 2 |

B00009-0020394



| | $0.00 | $0.00 | $0.00 | $0.00 | $13,807.29 |

To ensure proper payment application, please remit payment with original invoice payment coupons. If original invoices are not available, please indicate the invoices you are paying by checking the box(s) above and sending this entire statement with your payment.

Customer Number: 01300 103509708
Statement Date: 09/11/06

Please Pay This Amount        $13,807.29

Amount Enclosed: $ _____

▽   MAIL PAYMENT TO   ▽

#BWNKFYG
#807905301003101#
VALBRUNA STAINLESS INC
2400 TAYLOR ST W
FORT WAYNE, IN 46801

ADT SECURITY SERVICES INC.
P.O. BOX 371956
PITTSBURGH, PA 15250-7956

ⅠⅡⅡⅡⅡⅡⅡⅡⅡⅡⅡⅡⅡⅡⅡⅡⅡⅡⅡⅡⅡ

0010350970800035317179010010600138072900138072299

**EXHIBIT**

tabbles

A

713/686058

TEXAS DPS PRIVATE SECURITY BUREAU
P. O. BOX 4087
AUSTIN, TEXAS 78773
512-424-7719
LICENCE B0-00336

**COMMERCIAL SALES PROPOSAL/AGREEMENT**

| TOWN NO. | CUSTOMER NO. | JOB NO. |
|---|---|---|

Date 08/13/06

**ADT** ADT Security Services, Inc. ("ADT")
Address: 2625 LOUISIANA
HOUSTON, TEXAS  77006
Lic. No. B-536

To: (Customer Name and Address)
VALBRINA STAINLESS, INC.
4747 OATES ROAD
HOUSTON, TEXAS  77013

VALB_BF.WS

Tel. No. 713/525-6428    ELLEN KNIGHT    Attn: DAVID NELSON    Tel. No. 713/676-1700

ADT proposes to install or caused to be installed the equipment and furnish the services indicated herein:

| QTY. | DESCRIPTION | LOCATION (BE SPECIFIC) |
|---|---|---|
| 1 | FOCUS 200 PLUS CONTROL PANEL | |
| 1 | 24 HOUR BACKUP BATTERY PACK | |
| 3 | FOCUS 200 INTERACTIVE KEYPADS | |
| 8 | EIGHT ZONE HARD WIRE EXPANDERS | |
| 5 | POWER SUPPLIES | |
| 13 | GLASS BREAK DETECTORS | |
| 1 | MAGNA PULL HEAVY DUTY GATE PLUG | |
| 2 | CONNECTIONS TO WATERFLOW SENSORS | |
| 2 | CONNECTION TO TAMPER SWITCHES | |
| 2 | WATERFOLW RETARD PIDS | |
| 2 | STANDALONE SIM MODULES | |
| 2 | MANUAL FIRE ALARM PULL STATIONS | |
| 1 | PHOTOELECTRIC SMOKE DETECTOR | |
| 1 | TELGUARD UL DIGITAL CELLULAR BACKUP DIALER | |
| 1 | CONDUIT FOR GATE CONTACT | |
| | | |
| | CONNECT AS FOLLOWS: | |
| | OFFICE SYSTEM: FOCUS 200F KEYPAD, SOUNDER, DOOR CONTACTS, | |
| | MOTION SENSORS AND NEW GLASS BREAK DETECTORS. | |
| | WAREHOUSE SYSTEM: FOCUS 200F KEYPAD, SOUNDER, DOOR CONTACTS, | |
| | OVERHEAD DOOR CONTACTS AND MOTION SENSORS. | |
| | YARD SYSTEM: SIREN, F. E. BEAMS, NEW MAGNA PULL GATE CONTACT | |
| | | |
| | CABLE, CONDUIT AND LABOR TO INSTALL. | |

THIS SYSTEM IS DESIGNED TO MEET NFPA, STATE, AND LOCAL CODES. SHOULD THE AUTHORITY HAVING JURISDICTION REQUIRE MORE EQUIPMENT THAN IS LISTED ABOVE, ADT WILL INSTALL SAID EQUIPMENT AT ADDITIONAL COST TO THE CUSTOMER.

SALES TAX NOT INCLUDED.

Customer acknowledges that: (a) ADT has explained the full range of protection, equipment, and services available to Customer; (b) additional protection over and above that provided herein is available and may be obtained from ADT at an additional cost to the Customer; and (c) Customer desires and has contracted for only the equipment and services itemized on this Agreement.

For the sum of   11,473.00   payable
upon acceptance of this proposal and the balance payable upon completion of the installation and as a pre-condition to activation of the system and, if applicable, connection to central station or direct connection services. In addition for the service(s) to be provided as indicated above, Customer agrees to pay

2,522.00

per annum, annually in advance for a period of five years effective from the date service is operative under this agreement...

**Customer Acceptance**

In accepting this Proposal, Customer agrees to the terms and conditions contained herein including those on the reverse side. It is understood that they shall prevail over any variation in terms and conditions on any purchase order or other document that the Customer may issue. Any changes in the system requested by the Customer after the execution of this Agreement shall be paid for by the Customer and such changes shall be authorized in writing. ATTENTION IS DIRECTED TO THE WARRANTY, LIMIT OF LIABILITY AND OTHER CONDITIONS ON REVERSE SIDE.

Signed _____

Regional Manager    8-14-06
Title    Date

By _____ ELLEN KNIGHT
Agent

Approved _____
Authorized Representative of ADT

This Agreement is not binding unless approved in writing by an authorized Representative of ADT. In the event of failure of such approval, the only liability of ADT shall be to return to the Customer the amount, if any, paid to ADT upon signing of this Agreement.

Form 2281-05    CENTRAL STORAGE FACILITY    © 1997 ADT Security Services

| Type of Transaction |
|---|
| ☒ Direct Sale (equipment to become property of the Customer upon payment of Selling Price indicated below in full). |
| ☐ System to remain property of ADT. |

Services To Be Provided    P - Provided
NP - Not Provided
(Circle One)

Central Station Signal Receiving and Notification Service
Maintenance
Inspections
Opening/Closing Logging

**ADT**
ecurity
ystems

TEXAS ADT SECURITY SYSTEMS, INC.
P. O. BOX 4087
AUSTIN, TEXAS 78723
512-424-7710
LICENCE #B-00536

# R I D E R
## For Additional Service

THIS RIDER made this ___30th___ day of ___AUGUST, 2006___, is part

and is to be attached to Agreement made the ___14th___ day of ___AUGUST, 2006___, by and between

'T Security Systems, _____, Inc.

reinafter called "ADT", and ___VALBRUNA STAINLESS, INC.___

reinafter called the "Customer", for ___ADDITIONAL___

·vice in the premises of the Customer at ___4747 OATES ROAD___

the City of ___HOUSTON___, State of ___TEXAS___ ___77013___

The Customer hereby requests, and ADT agrees, to install the following additional protection:

D TO FOCUS SYSTEM AS FOLLOWS:

(FOUR) OVWEHEAD DOOR CONTACTS

BLE AND LABOR TO INSTALL.

ESCALATION FOR FIVE YEARS

ES TAX NOT INCLUDED.

The Customer hereby agrees to pay ADT, its Agents or Assigns, the sum of _____

___ONE THOUSAND TWO HUNDRED EIGHTY TWO DOLLARS___ ($ ___1,282.00___ )

·yable upon signing of this Agreement and the balance payable upon completion of the installation, and to pay in addition the additional sum

___-0-___ ($ ___-0-___ )

· annum payable in advance.

The parties hereto mutually agree that the aforesaid Agreement, of which this Rider is made a part, is and shall be and remain in full

ce and effect in accordance with all of the terms and conditions thereof, modified only as in this Rider specifically provided.

It is further agreed to that the original expiration date of the referenced Agreement shall be extended for a period of _____

ars.

This Rider is not binding unless approved in writing by an authorized representative of the Company described above as ADT.

ADT SECURITY SYSTEMS, INC.          VALBRUNA STAINLESS, INC.
                   ADT                                    Customer

___FI EN KNIGHT___          By_____
                  Agent

PROVED _____          _____
      Authorized Representative of ADT                          Title

RM 840-01 (8/92)

**ADT**
Security
Systems

P.O. BOX 1087
AUSTIN, TEXAS, 78723
512-424-7710
LICENCE #B-00336

# RIDER
## For Additional Service

This RIDER made this __30th__ day of __AUGUST, 2006__ , is part of and is to be attached to Agreement made the __14th__ day of __AUGUST, 2006__ , by and between ADT Security Systems, _____, Inc.

hereinafter called "ADT", and __VALBRUNA STAINLESS, INC.__

hereinafter called the "Customer", for __ADDITIONAL__

service in the premises of the Customer at __4747 OATES ROAD__

in the City of __HOUSTON__ , State of __TEXAS__ __77013__

The Customer hereby requests, and ADT agrees, to install the following additional protection:

DD TO FOCUS SYSTEM AS FOLLOWS:

(FOUR) OVHEHEAD DOOR CONTACTS

ABLE AND LABOR TO INSTALL.

O ESCALATION FOR FIVE YEARS

ES TAX NOT INCLUDED.

The Customer hereby agrees to pay ADT, its Agents or Assigns, the sum of _____
ONE THOUSAND TWO HUNDRED EIGHTY TWO DOLLARS ($ __1,282.00__ )

ayable upon signing of this Agreement and the balance payable upon completion of the installation, and to pay in addition the additional sum
f __-0-__ ($ __-0-__ )

er annum payable in advance.

The parties hereto mutually agree that the aforesaid Agreement, of which this Rider is made a part, is and shall be and remain in full
rce and effect in accordance with all of the terms and conditions thereof, modified only as in this Rider specifically provided.

It is further agreed to that the original expiration date of the referenced Agreement shall be extended for a period of _____
ears.

This is to be ... ... ... ... ... in writing by an authorized representative of the Company described above as ADT.

ADT SECURITY SYSTEMS, INC. _____ ADT

y __ELLEN KNIGHT__ Agent

PPROVED _____
Authorized Representative of ADT

VALBRUNA STAINLESS, INC. _____ Customer

By _____
Regional Manager Title

IRM 840-01 (8/92)

## PROPOSAL

8/10/2006    Rev. 072806

| From: | To: |
|---|---|
| **ADT** ADT Security Services, Inc. 2825 LOUISIANA HOUSTON, TEXAS 77006 | VALBRUNA STAINLESS, INC. 4747 OATES ROAD HOUSTON, TX 77013 |
| Phone: 713/525-6428  Sales Rep:  ELLEN KNIGHT | Attn:  DAVID NELSON    713/676-1700 |

Fax   713/789-5058

| QTY | DESCRIPTION | LOCATION |
|---|---|---|
| 1 | PKG - Focus 200 Plus(P1) w/SIM gateway, backup dialer | |
| | Order items in lines c-h (incl in above pkg price) | |
| | #N/A | |
| | #N/A | |
| | #N/A | |
| | #N/A | |
| | #N/A | |
| | #N/A | |
| 1 | Aux Pwr Supply(24hr.Standby) | |
| 2 | Focus 200 Interactive Keypad          — 3? | |
| 5 | 8 zone hard wire expander, connects to ECP bus | |
| 6 | Power Supply DC, 12V 1-Amp | |
| 15 | Glassbreak (0-001-029-02) | |
| 1 | SR-2105AG MAGNA PULL HEAVY DUTY PLUG | |
| 1 | CONNECTION TO TWO (2) WATERFLOW SENSORS | |
| 1 | CONNECTION TO TWO (2) TAMPER SWITCHES | |
| | | |
| 1 | Optional battery box cabinet-holds 2-18 amp hr. batteries | |
| 2 | Battery, 12V, 17.0 AH for Unimode II, 4-16, 200 2 reqd | |
| 2 | Waterflow Retard PID | |
| 2 | Standalone SIM Module | |
| 2 | Pull Station, Conventional Dual Action w/Key Lock | |
| 1 | SIM Smoke Detector with Heat, thermal | |
| 1 | Telguard Digital UL Commercial Fire | |

**Type of Transaction**
- ◉ Direct Sale
- ○ System to remain prop. of ADT

**Services To Be Provided:**
Central Station Signal ☐
Type of Service(s)    **SWF - 11**
☑ Phone Charges Not in ADT Bill

**Direct Connection To:**
Using
- ◉ Digital Communicator
- ○ Leased Line
- ○ Derived Local Channel

☑ QSP (Maintenance)
☐ Annual Training   ☑ Pref.TechSuppor
☑ Test & Inspect        1 Inspections/yr
☐ Sens. Testing      ☐ PreventiveMtnc
Investigator Response:        10 - None

**Open/Close Service(s):**
ADT Select Datasource

**Other**
Initial for familiarization period
Initial to decline Maintenance

| | Installation | Annual Cost |
|---|---|---|
| Outright Sale | $11,473 | $864 |
| | ? | |
| | ↓ | |

|  |  |  |
|---|---|---|
| $11,473 | Outright Sale | |
| $864 | Annual Service Charge | |

Monitoring ?

ALL FIGURES ABOVE EXCLUDE TAX

Wire less ?

**ADT**

# R I D E R
## For Additional Service

ADT Security Services, Inc.

THIS RIDER made this _____ 10th _____ day of _____ MARCH, 2006 _____, is part

and is to be attached to Agreement made the _____ 28th _____ day of _____ DECEMBER 2003 _____, by and between

ADT Security Services, Inc. _____

hereinafter called "ADT", and _____ CAROLINA STAINLESS INC. _____

hereinafter called the "Customer", for _____ MONITORING _____

vice in the premises of the Customer at _____ 45 GATES ROAD _____

the City of _____ WEBSTER _____, State of _____ TEXAS 77598 _____

The Customer hereby requests, and ADT agrees, to install the following additional protection:

FOCUS 200 FIRE CONTROL PANEL
BACKUP POWER PACK
TELGUARD (DIGITAL SPLIT TO RADIO CENTER)
RF'S INTERACTIVE KEYPAD
EIGHT ZONE EXPANDERS
TRANSFORMER DETECTORS
MINI TUBE HEAT DETECTOR
CONNECTIONS TO WATERFLOW SWITCHES
CONNECTIONS TO TAMPER SWITCHES
WATERFLOW RELAY(S)
STANDALONE STM MODULES
MANUAL FIRE ALARM PULL STATIONS
PHOTOELECTRIC SMOKE DETECTOR

ALL CONDUIT AND LABOR TO INSTALL

<span>Need P.O. #<br>19033</span>

_____

The Customer hereby agrees to pay ADT, its Agents or Assigns, the sum of _____

_____ ELEVEN THOUSAND FOUR HUNDRED SEVENTY THREE DOLLARS _____ ($ **11,473.00** )

_____rable upon signing of this Agreement and the balance payable upon completion of the installation, and to pay in addition the additional sum

_____ EIGHT HUNDRED SIXTY FOUR DOLLARS _____ ($ **864.00** )

annum payable in advance.

The parties hereto mutually agree that the aforesaid Agreement, of which this Rider is made a part, is and shall be and remain in full

ce and effect in accordance with all of the terms and conditions thereof, modified only as in this Rider specifically provided.

It is further agreed to that the original expiration date of the referenced Agreement shall be extended for a period of _____

irs.

This Rider is not binding unless approved in writing by an authorized representative of the Company described above as ADT.

_____     _____

ADT     Customer

By _____     8/10/06

Agent    

PROVED _____     _____

Authorized Representative of ADT     Title

0-01 (9/97)

```
PUBLIC RELEASE INFORMATION

                    HOUSTON POLICE DEPARTMENT                    FRONT PAGE
                         OFFENSE REPORT          Incident no. 167397189 W

fense- THEFT/LOSS $200.00 OR MORE - F
emises- YARD OF COMPANY                  Weather- CLEAR

cation: Street no- 004747  Name- OATES
          Type- RD        Suffix-       Apt no-
  City-HOUSTON            County-HARRIS          Kmap-456S Dist- 9 Beat- 9C30
ghborhood code-00101  Desc-ELDORADO

gin date- MO 11/09/09 Time- 0800  End date- TU 11/10/09 Time- 0800
eived/Employee: Name-LAPTOP              No.-           Date-11/16/09 Time-1840
```

```
                              COMPLAINANT(S)


01 Name: Last-NELSON            First-DAVID        Middle-
    Race-W Sex-M Age-49 Hispanic-N
    Address-4747 OATES RD;HOUSTON,TX 77013
    Phone: Home-(713) 676-1700 Business-(713) 676-1607 Ext-
```

```
                                ARTICLES

    01 Disposition-STOLEN      Property tag no-0-0000-00 Complainant no-01
    Item type-STAINLESS STEEL 316   UCR class-11
    Brand-NO BRAND/UNKNOW Model-
    Serial number-                   Value-$ 61862.00
cription-21,508 POUNDS OF STAINLESS STEEL 316 BARS APPROX. 11 TO 13 LONG.
PES VARIED FROM HEXEGON, SQUARE, AND ANGEL.  1/4 TO AN INCH THICK.
```

```
                            DETAILS OF OFFENSE



PL STATED THAT RAW STEEL WERE STOLEN.




icer1: Name-P BROUSSARD          Employee no-         Shift-2
ision/Station #-ECD          Unit #-TELES

t received: Date-11/16/09 Time-1341 Report accepted: Date-11/16/09 Time-1843
```

```
                            END OF PAGE ONE
```

**EXHIBIT**

tabbies

B

Stolen material from Valbruna Stainless
Incident # 167397109W

| Size | Shape | Grade | Length | Weight (lbs) | Heat # | Value | Color code |
|------|-------|-------|--------|--------------|--------|-------|------------|
| 3/8" | Square | 316 | 11'-13' | 2679 | 423594 | $6,803 | Yellow |
| 5/8" | Hex | 316 | 11'-13' | 728 | 420579 | $2,608 | Yellow |
| 11/16" | Hex | 316 | 11'-13' | 1661 | 421061 | $7,258 | Yellow |
| 3/16" | Square | 316 | 11'-13' | 1159 | 416167 | $4,595 | Yellow |
| 1/4" | Square | 316 | 11'-13' | 746 | 420980 | $2,846 | Yellow |
| 9/16" | Hex | 316 | 11'-13' | 1442 | 419997 | $5,801 | Yellow |
| 1" | Hex | 316 | 11'-13' | 2271 | 245485 | $6,178 | Yellow |
| 7/8" | Round | 304 | 11'-13' | 1866 | 420654 | $2,097 | Blue |
| 1 x 1 x 3/16 | Angle | 316 | 20'-22' | 2040 | 234138 | $4,797 | Yellow |
| 1-1/8" | Hex | 316 | 11'-13' | 2680 | 246603 | $7,316 | Yellow |
| 1-1/8" | Hex | 316 | 11'-13' | 2490 | 246603 | $6,797 | Yellow |
| 1-1/8" | Hex | 316 | 11'-13' | 1746 | 246603 | $4,766 | Yellow |
| | | | | | | | |
| | | | Totals | 21508 | | $61,862 | |

EXHIBIT

C



**EXHIBIT**

D



**EXHIBIT**

E



Customer Number:
01300-103509708
Business/Account Name:
VAL BRUNA

Service Address:
4747 Oates Rd
Houston, TX 77013-3343

How to Read Your Bill:
http://www.adt.com/billinfo
ADT Tax ID Number: 58-1814102
Monitoring/Service:(800) 238-2727
Sales/Relocation:   (800) 238-7887
Billing Questions:   (888) 238-2455

It's fast and even more
important - it's easy! You can
save time and money
paying your bill. Please see
the back of your invoice to see
how you can setup your
account for automatic
payments using your bank
account!

Visit www.ADT.com for up-to-date
security services information for your
business.

To pay this invoice and/or future
recurring invoices by credit card,
follow the instructions on the
back of this invoice.

| | Purchase Order Number | Invoice Date | Invoice Number | Invoice Amount | Payment Due Date |
| --- | --- | --- | --- | --- | --- |
| | | 12/05/09 | 03593132 | $790.77 | 01/01/10 |

Nature of Service: Quarterly Billing

Current Charges

Total Balance Due:                    $790.77

TEST YOUR ALARM SYSTEM MONTHLY TO CONFIRM YOUR SYSTEM IS OPERATIONAL

EXHIBIT

F

P00006-00540688

12/08/2008 18:20 FAX 7138758922          HOUSTONHARRISDIVISIONPAT                    002/002

## HOUSTON HARRIS DIVISION PATROL INC

### 6420 RICHMOND AVE SUITE 520
### HOUSTON, TX 77057

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/8/2009 | 30581 |

| Bill To |
|---------|
| Valbruna Stainless<br>4747 Oates Rd<br>Houston, Texas 77013 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
|  | Due on receipt |  |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 29 | Commission Guard From 12/08/09 To 12/09/09 | 18.50<br>8.25% | 536.50T<br>44.26 |

VENDOR#          12/9/1
DATE RECEIVED
GL#          95185001
EMAILED/APPROVED          1/4/10
TRANSACTION#          bc
DATE POSTED
BY

QKD.M
12-8-09

| Please remit to above address. | **Total** | $580.76 |
|--------------------------------|-----------|---------|

**EXHIBIT**

G

# HOUSTON HARRIS DIVISION PATROL INC

6420 RICHMOND AVE SUITE 520
HOUSTON, TX 77057

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/29/2009 | 30939 |

**Bill To**

Valbruna Stainless
4747 Oates Rd
Houston, Texas 77013

| P.O. No. | Terms | Project |
|----------|-------|---------|
|  | Due on receipt |  |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 266.5 | Commission Guard From 12/10/09 To 12/26/09 | 18.50 | 4,930.25 |
| 24 | Commission Guard Holiday 12/25/09 | 9.25 | 222.00 |
|  |  | 8.25% | 425.06 |

Please remit to above address.

| **Total** | **$5,577.31** |
|-----------|---------------|

## HOUSTON HARRIS DIVISION PATROL INC

**6420 RICHMOND AVE SUITE 520**
**HOUSTON, TX 77057**

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/12/2010 | 31142 |

**Bill To**

Valbruna Stainless
4747 Oates Rd
Houston, Texas 77013

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | Due on receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 225.5 | Commission Guard From 12/27/09 To 01/09/10 | 18.50 | 4,171.75T |
| 14.25 | Commission Guard Holiday 01/01/10 | 9.25 | 131.81T |
| | | 8.25% | 355.04 |

Please remit to above address.

**Total**   $4,658.60