**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| VALBRUNA STAINLESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 1:10-CV-00077-WCL-RBC |
| | ) | |
| ADT SECURITY SERVICES, INC.; and | ) | |
| ADT HOLDINGS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court for resolution of a motion to transfer venue filed by

Defendants ADT Services, Inc. and ADT Holdings, Inc. (collectively, "ADT") on May 27, 2010.

(Docket at 27.)  Plaintiff Valbruna Stainless, Inc. ("Valbruna") filed a memorandum in

opposition to the motion on June 11, 2010. (Docket at 30.)  ADT responded in kind on June 21,

2010 with a memorandum in support. (Docket at 32.)  For the reasons discussed below, ADT's

motion to transfer venue is hereby GRANTED.  The Clerk of the Court is directed to transfer this

case to the United States District Court for the Southern District of Texas.

**FACTUAL AND PROCEDURAL BACKGROUND**

The relevant facts of the instant action are summarized as follows.  On August 14, 2006,

ADT and Valbruna entered into a contractual agreement for the installation and monitoring of a

security system for Valbruna's Houston, Texas facility.  The contract was negotiated and

executed in Texas by Texas employees.[1]

The installed security system was damaged by Hurricane Ike in September 2008, and was shortly thereafter repaired by ADT.  Approximately one year later, Valbruna's Houston, Texas facility was burglarized by an unknown third-party.  Independent contractors hired by ADT subsequently made repairs to the system and purportedly discovered the alarm system's photoelectric sensors had been deactivated or overridden.  While the photoelectric sensors were being repaired, Valbruna contracted security personnel to physically monitor the premises.

Shortly thereafter, on March 18, 2010, Valbruna filed its complaint in this Court seeking damages in the amount of $124,719.80.[2]  Valbruna claims violations under the Racketeer Influenced Corrupt Organizations Act ("RICO"),[3] various acts of fraud and/or negligence, and various theories arising under contract law.  The parties agree that Texas law controls all state-law claims.  This Court has subject-matter jurisdiction under 28 U.S.C. §1391, as the RICO claim involves a matter of federal question.

## APPLICABLE LEGAL STANDARD

Any federal district court in which a suit has been filed with proper venue may, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).  The party moving for transfer must show that "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice."

---

[1] The contract's signatories include Frances "Ellen" Knight, Retired ADT Commercial Sales Representative, and David Nelson, Valbruna Regional Manager.  Both signatories are residents of Houston, Texas. (Docket at 1, 27 & 27-2.)

[2] This number represents: "$61,862.00 of stolen product inventory, $13,807.29 for the purchase of the System, $12,234.40 for a monthly monitoring fee from installation in August 2006 through December 2009, $10,816.51 for the costs of physical security guards at the Premises, and costs, expenses and attorney's fees." (Docket at 1.)

[3] 18 U.S.C.A. § 1961, *et seq.* (West 2009).

*OmniSource Corp. v. Sims Bros., Inc.*, 2008 WL 2756345, at *3 (N.D. Ind. July 14, 2008) (citing *Coffey*, 796 F.2d at 219).  These factors "turn upon the particular facts of each case," *Coffey*, 796 F.2d at 219 n.3, and the movant carries the "burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient," *Id.* at 219–20.[4] Furthermore, since the weighing of relevant factors "involves a large degree of subtlety and latitude" district court judges exercise substantial discretion in deciding whether to grant or deny a § 1404 motion. *Id.* at 219.

A district court should balance the following "private interests" in its convenience analysis: "(1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease and access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties of litigating in the respective forums." *Schumacher v. Principal Life Ins. Co.*, 665 F. Supp. 2d 970, 977 (N.D. Ind. 2009); *OmniSource*, 2008 WL 2756345, at *3.

In addition to these private interests, a court must also consider the "interest of justice" or "public interest," which is a separate component of a § 1404(a) transfer analysis. *Coffey*, 796 F.2d at 219; *OmniSource*, 2008 WL 2756345, at *4.  This component of the analysis relates not to the merits of the underlying dispute, but rather to the efficient functioning of the courts. *Id.* at 221.  "Public interest factors include the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *Id.* at *4 (internal citations and quotation marks omitted); *see also Coffey*, 796 F.2d at 221 ("[T]he interest of justice may be served by a transfer to a district where the litigants are more likely to receive a speedy trial . . . [or] where consolidation is feasible. . . . [I]t is also considered advantageous to have federal judges try a case who are familiar with the applicable

---

[4] This burden can be met with "less of a showing of inconvenience [than] is needed for . . . a *forum non conveniens* dismissal. *Coffey*, 796 F.2d at 220 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981)).

state law." (internal citations and footnote omitted)); *cf. Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.").  A determination on the best interest of justice "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220.

**DISCUSSION**

Since neither party argues against the conclusion that venue is proper both in the Northern District of Indiana and in the Southern District of Texas, we now proceed to the private and public interest factors which this Court must consider in deciding whether to grant ADT's motion for transfer of venue.  Pursuant to the following discussion, this Court finds these factors, on balance, to support transfer and that, under the particular circumstances of this case, that the Southern District of Texas is a "clearly more convenient" forum.

A.      *Private Interests*

*1. Plaintiff's Choice of Forum*

"A plaintiff's chosen forum is entitled to substantial deference, particularly where the chosen forum is the plaintiff's home forum." *Schumacher*, 665 F. Supp. 2d at 977.  Where the chosen forum is not the situs of material events, however, or if another forum has a stronger relationship to the dispute, plaintiff's selection is entitled to less deference. *Id.*; *OmniSource*, 2008 WL 2756345, at *4.  "If that is the case, plaintiff's choice becomes simply one factor among many to be considered." *OmniSource*, 2008 WL 2756345, at *4 (internal citation and quotation marks omitted). *But cf. In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) ("'[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum

should rarely be disturbed.'  Rarely, however, is not never." (quoting *Gulf Oil Corp.*, 330 U.S. at 508) (internal citations omitted)).

As will soon become clear, the present action, while brought in Plaintiff's home forum, is neither the situs of material events nor the forum with the strongest relationship to the dispute. For these reasons, Plaintiff's selection is but one factor among the many this Court must consider.

*2. Situs of Material Events*

"In a breach of contract case, the situs is where the business decisions causing the breach occurred[,] . . . considering where the agreement was primarily negotiated and signed . . . ." *OmniSource*, 2008 WL 2756345, at *4. (internal citation and quotation marks omitted).  While Valbruna contends that the situs of its RICO claim is Fort Wayne, Indiana, this argument is unavailing since: i) Valbruna's RICO claim is essentially an extension of its breach of contract claim and ii) *OmniSource* teaches otherwise.[5]  In *OmniSource*, OmniSource, an Indiana corporation, contracted with Sims Brothers, an Ohio corporation, for the collection of scrap metal from Whirlpool Corporation's Marion, Ohio facility.  OmniSource sued for breach of contract when a portion of the scrap metal went missing from Sims Brothers' Ohio warehouse. In granting Sims Brothers' motion to transfer venue to Ohio, this Court (United States Magistrate Judge Roger B. Cosbey presiding) rejected OmniSource's argument that the proper situs of material events was Indiana, where the "administration" of the contract had occurred—i.e., receiving and processing invoices, making payments thereon, and tracking inventory.

---

[5] The basis of Valbruna's RICO claim is that ADT charged Valbruna for services under the contract (via mail and wire) that ADT intentionally failed to perform in order to defraud Valbruna. (Docket at 1& 30.)  This claim is therefore dependant upon the underlying question of whether or not ADT is in breach of contract.

Like in *OmniSource*, Valbruna makes similar arguments with regard to its RICO claim having situs in Fort Wayne.  Valbruna contends that Fort Wayne is where invoices were received, where accounts payable were processed, and from where payments were made to ADT. Like in *OmniSource*, however, "the contract's 'administration' does not necessarily appear to be at the heart of this dispute," rather the dispute seems to center on the execution of the contractual agreement. *Id.* at *5.  In fact, even ADT concedes that Valbruna processed invoices and paid ADT, likely from its Fort Wayne office (Docket at 32); and as stated *supra*, at note 5, the RICO charge is inextricably dependant upon Valbruna's underlying breach of contract claim. Moreover, the location of the property at issue (e.g., the security system apparatus, the Valbruna distribution facility, and the relevant ADT office) and the location of all other material events (e.g., the contract negotiation and execution, the burglary, the alleged fraudulent conduct, the police investigation, etc.) are in Houston, Texas. *Id.*

*3. Relative Ease and Access to Sources of Proof*

The third factor which this Court considers is the relative ease and access to sources of proof in the two forums.  As mentioned *supra*, there are multiple property items that may serve as sources of proof in this case, including, *inter alia*, the security system and the stolen Valbruna inventory.  Additionally, while both parties argue that extensive documentation is located in their respective forum, the documentation most relevant to the underlying issues is located in Houston, Texas.  Valbruna's Indiana documents seem only to concern payment processing, which has already been addressed *supra*.  Moreover, should any third-party records or testimony be required (e.g., from third-party contractors or the Houston Police Department), such evidence would fall outside this Court's 100-mile subpoena power. *See OmniSource*, WL 2756345, at *5– 6.  Therefore, this third private interest factor also favors transfer.

6

*4. Convenience of Witnesses*

Witness convenience is "the most important factor in the transfer balance" and includes, *inter alia,* "the number of witnesses involved, travel distances and associated costs . . . , the willingness of the witnesses to appear, or whether the witness is within the court's reach to compel appearance." *Id.* at *6 (internal citations and quotation marks omitted).  Returning to *OmniSource,* in that case both parties had a number of witnesses located in their respective forum.  Many of OmniSource's witnesses, however, were either employees or offered unnecessarily duplicative testimony.   In weighing witness convenience, this Court noted:

> [T]he court generally assigns little weight to the location of employee-witnesses.
> Because these witnesses usually are within the control of the parties, they are
> likely to appear voluntarily in either forum. . . . [Furthermore, t]he determination
> of whether a particular venue is more convenient for the witnesses should not turn
> on which party produces a longer witness list.  Rather, the court must look to the
> nature and quality of the witnesses' testimony with respect to the issues of the
> case.

*Id.*; *see also Lawrence v. Swift Transp. Co.*, 2007 WL 3334788, at *4 (S.D. Ind. Nov. 8, 2007) ("Case law cautions against dong a mere count to determine the overall convenience of the witnesses—the substance of the testimony matters.").  This Court further held that consideration of a key-witness' place of residence is even more significant, as is the location any material non-party witness who may fall outside the court's subpoena power. *OmniSource*, 2008 WL 2756345, at *7.  "In fact, the convenience of non-party witnesses is often viewed as *the most important* factor in the transfer analysis." *Id.*; *see also Skill-Craft Enters., Inc. v. Astro Mfg., Inc.*, 1990 WL 300705, at *6 (N.D. Ind. Dec. 3, 1990) ("The inability to compel the appearance of a material, non-party witness weighs heavily in favor of transfer.").

Like in *OmniSource*, both parties in the instant action have designated a large number of potential witnesses who are in the parties' employ.  While these witnesses may be given less weight in connection with their employee status, many of the employee witnesses that ADT has

7

identified in Houston are key witnesses with respect to each party's understanding of the terms of the agreement. The two most significant of these are the contract's signatories, Frances "Ellen" Knight of ADT and David Nelson of Valbruna, who both reside in Houston, Texas. Particularly relevant is the fact that Ms. Knight is retired, and thus no longer an employee of ADT who can be compelled by her employer to appear in Indiana. Other, non-party witnesses identified by ADT include Houston Police officers, ADT's independent contractors, and Valbruna's contracted security guards. In contrast, Valbruna identifies only one non-party witness in Fort Wayne, Bobby Ables. While sheer numbers alone are not determinative, this Court is unimpressed by the nature and quality of Vabruna's non-party witness and thus does not allocate much weight to his inconvenience.[6]

Also like in *OmniSource*, and in contrast to ADT's identified prospective witnesses, Valbruna has proffered numerous Indiana witnesses to testify on the matters of payment-processing, Valbruna's security requirements, and lost-inventory valuation. All except one of these witnesses is a Valbruna employee, and most are unnecessary and/or duplicative.[7] Since this Court looks to the nature and quality of potential witnesses rather than sheer number, little weight is given to the litany of potential witnesses proffered by Valbruna.

*5. Convenience of Parties*

When plaintiff and defendant are in different states, no choice of forum can hope to avoid inconveniencing one party or another; but when alternative venues each impose a relatively

---

[6] Specifically, Mr. Ables' testimony does not appear likely to be substantively material. Perhaps testimony concerning the security requirements of Valbruna's Houston, Texas facility would more appropriately stem from a Houston-based witness familiar with that facility.

[7] Valbruna lists three witnesses to testify about invoicing and payment practices (an issue already thoroughly discussed as unnecessary and/or dependant on the underlying contract claim), four witnesses to testify about the value of Valbruna's stolen inventory (an issue on which the parties should perhaps stipulate rather than litigate), and three witnesses (one repeated from the inventory valuation list) to testify about Valbruna's security system requirements. (Docket at 30-1.) *See also supra*, note 6.

equal degree of inconvenience on the parties, "the tie is awarded to the plaintiff." *In re Presto*, 347 F.3d at 665.  In *Presto*, the Securities and Exchange Commission (SEC) brought an enforcement action against Presto Industries in federal court in Chicago, Illinois.  Denying Presto's petition for writ of mandamus (the petition being in response to the lower court's refusal to transfer venue to Wisconsin), Judge Posner expressed his concern that "[t]he SEC cannot afford a regional office in every state.  It has only eleven regional offices and the only one in the Midwest is the Chicago office . . . ." *Id.* at 664.[8]

Contrary to the facts of *Presto*, the case at bar involves two parties who both conduct business and have permanent facilities in the transferee forum.  Valbruna's only legitimate convenience concern is that their corporate *headquarters* is located in Indiana.  This concern is insufficient to defeat other evidence already discussed which convincingly indicates that Texas is the "clearly more convenient" forum.

### B.      The Public Interest

In addition to "private interest" factors, this Court also considers the "public interest" factors, i.e., the "interest of justice."  As explained *supra*, this analysis focuses on the efficient administration of the court system rather than on the merits of the underlying dispute. *Coffey*, 796 F.2d at 219.

ADT argues that since Texas law governs nearly all of Valbruna's claims, it is in the best interest of justice to allow federal judges versed in Texas law to decide these issues. (Docket at 32.)  ADT also submits that courts must consider the interest of competing jurisdictions and that justice is promoted when a localized controversy is decided in the region that it impacts, noting

---

[8] The Seventh Circuit noted in *dicta* that, considering all relevant circumstances of the case, the factors may have favored transfer to the Western District of Wisconsin, "[b]ut the balance is not so far askew as to justify the extraordinary relief sought by Presto." *In re Presto*, 347 F.3d at 665 (referring to the writ of mandamus).

that the citizens of Houston have a substantial interest in the resolution of a local crime. *Id.* (referencing *Piper Aircraft*, 454 U.S. at 241 n.6; *Gulf Oil Corp.*, 330 U.S. at 509).

While Valbruna does not dispute that Texas law controls many of its claims against ADT, it counters that the RICO charge can be adjudicated "just as competently" in Indiana as in Texas. (Docket at 30.)  Accordingly, Valbruna argues, this equivalence of suitability should be resolved in favor of the forum in which the case was filed.

This Court finds ADT's argument to be the more compelling.  As noted by ADT, the Seventh Circuit has recognized that it is "advantageous to have federal judges try a case who are familiar with the applicable state law." *Coffey*, 796 F.2d at 221 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  In addition to the considerations identified by ADT, this Court also recognizes that "the interest of justice may be served by a transfer to a district where litigants are more likely to receive a speedy trial." *Id.*  Because nearly all key witnesses and material evidence is located in Houston, it is likely that the parties will be able to conduct a more efficient discovery and more expeditiously proceed to trial.  Moreover, as Valbruna correctly indicates, the federal RICO claim can be "just as competently" adjudicated in the Southern District of Texas as in the Northern District of Indiana; and thus, Plaintiff suffers no disadvantage by the claim's transfer to the former.

## CONCLUSION

After considering all relevant factors, as well as surrounding facts and circumstances, this Court is convinced that the balance of party and witness convenience and the interests of justice "clearly" weigh in favor of transfer of the instant action to the Southern District of Texas.

For the foregoing reasons, the motion to transfer venue filed by Defendants ADT Security Services, Inc. and ADT Holdings, Inc. is hereby GRANTED.  The Clerk of the Court is

directed to transfer this case to the United States District Court for the Southern District of Texas.

Date:  July 12, 2010.                         **William C. Lee**_____
                                              William C. Lee, Judge
                                              United States District Court